**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DARINEL ERASTO MEJIA RAMOS,<br><br>Petitioner,<br><br>v.<br><br>FRANK PADULA, Acting Boston Field Office Director, TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and MARKWAYNE MULLIN, U.S. Secretary of Homeland Security, TODD BLANCHE, Acting U.S. Attorney General,<br><br>Respondents. | Case No. 26-12239<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Petitioner Darinel Erasto Mejia Ramos brings this petition for a writ of habeas corpus to challenge his constructive detention and threatened physical detention by the Respondents.

2. Petitioner has remained in the United States under an Order of Supervision ("OSUP") since his arrival in 2018. At his most recent check-in with Immigration and Customs Enforcement ("ICE") in April, 2026, his OSUP was revoked without due process of law.

3. Petitioner was ordered to return to the ICE office in Framingham, Massachusetts on Monday, May 18th, 2026, and anticipates that his physical detention will occur on that date.

4. Respondents' actions violate the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Immigration and Nationality Act and implementing regulations, the Administrative Procedure Act, and the *Accardi* doctrine, which obligates administrative agencies to follow their own rules, procedures, and instructions.

5. Petitioner seeks habeas relief in the form of a return to the conditions of his prior OSUP,

as well as injunctive relief preventing his detention by ICE without due process of law.

**BACKGROUND**

6. Petitioner, a 41-year-old noncitizen from Guatemala, resides in Springfield, Massachusetts with his wife and their three minor children, the youngest of whom is a United States citizen. Ex. 1. He supports his family as a landscaping laborer.

7. Petitioner has no criminal history. He first entered the United States via the southern border in approximately 2002. He was not encountered, and left of his own accord in approximately 2011 for family reasons.

8. After being extorted and threatened by gangs in Guatemala because of his Catholic faith, the Petitioner returned to the United States with one of his minor children via the southern border in 2018, whereupon he was apprehended by immigration authorities and detained. He was issued an expedited removal order on January 16th, 2018. Ex. 2 at 1.

9. On April 20th, 2018, Petitioner was issued an Order of Supervision requiring him to check in regularly with ICE, among other requirements. *Id*. at 3-5.

10. On April 9th, 2019, Petitioner filed an application for asylum with U.S. Citizenship and Immigration Services ("USCIS"). Ex. 3 at 1. He submitted biometrics to USCIS on May 8th, 2019. Ex. 4. Because of his removal order, on April 3rd, 2020, USCIS made a determination that they lacked jurisdiction and referred his case to an asylum officer to conduct a credible fear screening. Ex. 5. No screening was ever scheduled.

11. Over the eight years following his entrance into the country, Petitioner complied in full with the requirements of his OSUP. He was initially ordered to wear an ankle monitor and report every month. In 2021, after he had complied with this strict reporting regimen for three years, his ankle monitor was removed, and his reporting requirement was lengthened to every two years.

12. Petitioner continued to comply with his OSUP requirements. On April 14th, 2025, he was told that "things had changed" and was ordered to return to monthly check-ins. An ankle monitor was placed on his leg. Ex. 1. No other reason was provided for this sudden change in the conditions of his OSUP.

13. Petitioner continued to comply with these more onerous requirements. At his last check-in, in April 2026, he was told that at his next appointment, on May 18th, 2026, he would have to leave the country. He was further told that by that appointment, he needed to make a decision about whether he would be leaving the country with his family or alone. No reason was given for this sudden change, and nor was Petitioner given the opportunity to respond to any reasons.

14. From this conversation at his last check-in, Petitioner understood that ICE's intention is to detain him and move to remove him from the United States, and that his OSUP was accordingly revoked or that a decision had been made to revoke it.

15. Upon information and belief, the official responsible for determining that Petitioner's OSUP would be revoked did not first refer the case to the ICE Executive Associate Director, did not make findings that revocation was in the public interest and that circumstances did not reasonably permit referral to the Executive Associate Director, and had not been delegated authority to revoke an order of supervision.

16. Petitioner has prepared and intends to file an I-246 ("Application for a Stay of Deportation or Removal") at his check-in appointment on May 18th.

17. Petitioner desires the opportunity to move ahead with his credible fear screening, as he was told would occur six years ago, and to have the opportunity to present his asylum case for review, as has not yet occurred. If a negative finding is made, Petitioner requests the opportunity to prepare with his family for an orderly departure.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question).

19. Venue is proper under 28 U.S.C. § 1391(e)(1) because Respondents are officers of United States Agencies, Petitioner resides in Massachusetts, and there is no real property involved in this action.

## PARTIES

20. Petitioner Darinel Erasto Mejia Ramos is an applicant for asylum. Petitioner is in the constructive custody of, and under the direct control of, Respondents and their agents.

21. Respondent Frank Padula is the Acting New England Field Office Director for U.S. Immigration and Customs Enforcement.

22. Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement.

23. Respondent Markwayne Mullin is the U.S. Secretary of Homeland Security.

24. Respondent Todd Blanche is the Acting United States Attorney General, and, as such, the head of the Department of Justice.

25. All respondents are named in their official capacities. One or more of the respondents is Petitioner's immediate custodian.

## LEGAL FRAMEWORK

### The Petitioner is in the Constructive Custody of Respondents

26. Upon his release from ICE custody on April 20th, 2018, Petitioner was placed on an OSUP which subjects him to regular ICE check-ins. He was originally subject to GPS monitoring via an ankle monitor, which was removed in 2021 and replaced, without any cause provided, in 2025.

Such stringent requirements "[impose] conditions which significantly confine and restrain his freedom; this is enough to keep him in …'custody'…within the meaning of the habeas corpus statute." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). *See also Rumsfeld v. Padilla*, 542 U.S. 426, 437 ("Our understanding of custody has broadened to include restraints short of physical confinement…."); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2009).

27. This court, like other courts, has found previously that an individual subject to an OSUP who challenges the conditions of their release is "in custody" for the purposes of 28 U.S.C. § 2241. *Devitri v. Cronen*, 290 F. Supp. 3d 86, 90 (D. Mass. 2017); *see also, e.g., Doe v. Bar*r, 479 F. Supp. 3d 20, 26 (S.D.N.Y. 2020); *Xiao Biao Li v. Barr*, 839 F. App'x 589, 591 (2d Cir. 2020); *Alvarez v. Holder*, 454 F. App'x 769, 772-73 (11th Cir. 2011).

28. Other courts, moreover, have found that a final order of removal is sufficient for a noncitizen to be considered "in custody," because the existence of the order of removal allows the noncitizen to be deported by the government at any time, creating a restraint on liberty. *See Rosales v. Bureau of Immigration & Customs Enf't*, 426 F.3d 733, 735 (5th Cir. 2005).

29. The Petitioner in this case has, in addition to his OSUP and order of removal, an ankle monitor that tracks his location via GPS at all times. This monitor, a particularly onerous imposition given his strenuous outdoor employment in landscape, presents another restraint on his liberty that demonstrates that he is in the constructive custody of the Respondents.

**Due Process Governs Decisions to Revoke an Order of Supervision**

30. "The Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citation modified). "Freedom from imprisonment—from government

custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690 (2001).

31. Under substantive due process doctrine, a restraint on liberty like revocation of a non-citizen's order of supervision is only permissible if it serves a "legitimate nonpunitive objective." *Kansas v. Hendricks,* 521 U.S. 346, 363 (1997). The Supreme Court has only recognized two legitimate objectives of immigration detention: preventing danger to the community or preventing flight prior to removal. *See Zadvydas v. Davis*, 533 U.S. 678, 690-92 (discussing constitutional limitations on civil detention).

32. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty," like the decision to revoke a non-citizen's order of supervision. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (citation modified). "The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (citation modified).

33. Noncitizens are entitled to individualized determinations of their detention status. *See Nguyen v. Hyde*, 1:25-cv-11470 (D.Mass. June 20, 2025) (holding that ICE's decision to re-detain a non-citizen who is subject to an OSUP must result from (1) the agency's individualized determination that, (2) based on changed circumstances, (3) removal has become significantly likely in the reasonably foreseeable future); *Perez-Escobar v. Moniz*, No. 25-cv-11781-PBS (D.Mass. July 24, 2025) (holding that where DHS provided only conclusory statements to support re-detention of immigrant released on conditions, immigrant's due process right to adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner was violated, and the immigrant was ordered released subject to the same conditions of release as previously had been in effect); *Devitri v. Cronen*, 290 F. Supp. 3d at 90, 95 (holding that where

the petitioners experienced abrupt changes to their Orders of Supervision without adequate notice, they were deprived of an opportunity to exercise their due process rights.)

**Statute and Regulation Govern Procedures for Revoking an Order of Supervision**

34. A non-citizen with a final order of removal "who is not removed within the [90-day] removal period . . . shall be subject to [an order of] supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3) (titled "Supervision after 90-day period").

35. A non-citizen may only be detained past the 90-day removal period following a removal order if found to be "a risk to the community or unlikely to comply with the order of removal" or if the order of removal was on specified grounds. *Id.* § 1231(a)(6).

36. But even where initial detention past the 90-day removal period is authorized, if "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by [§ 1231(a)(6)]. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 699-700.

37. Regulations purport to give additional reasons, beyond those listed at § 1231(a)(6), that an order of supervision may be revoked and a non-citizen may be re-detained past the removal period: "(1) the purposes of release have been served; (2) the alien violates any condition of release; (3) it is appropriate to enforce a removal order . . . ; or (4) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2); *see also id*. § 241.13(i) (permitting revocation of an order of supervision only if a non-citizen "violates any of the conditions of release"). Because "[r]egulations cannot circumvent the plain text of the statute[,]" courts question whether these regulations are ultra vires of statutory authority. *See, e.g., You v. Nielsen*, 321 F. Supp. 3d. 451, 463 (S.D.N.Y. 2018) (comparing

regulations to 8 U.S.C. § 1231(a)(6), which authorizes detention past the removal period only if person is a risk to the community, unlikely to comply with the order of removal, or was ordered removed on specified grounds).

38. It is clear, however, that regulations permit only certain officials to revoke an order of supervision: the ICE Executive Associate Director, a field office director, or an official "delegated the function or authority . . . for a particular geographic district, region, or area." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161 (W.D.N.Y. 2025) (citing 8 C.F.R. §§ 1.2, 241.4(l)(2) and explaining that the Homeland Security Act of 2002 renamed the position titles listed in § 241.4). If the field office director or a delegated official intend to revoke an order of supervision, they must first make findings that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate [Director]." 8 C.F.R. § 241.4(l)(2). And for a delegated official to have authority to revoke an order of supervision, the delegation order must explicitly say so. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161 (finding a delegation order that "refers only to a limited set of powers under part 241 that do not include the power to revoke release" insufficient to grant authority to revoke an order of supervision).

39. Upon revocation of an order of supervision, ICE must give a non-citizen notice of the reasons for revocation and a prompt interview to respond. 8 C.F.R. § 241.4(l)(1).

**The APA Sets Minimum Standards for Final Agency Action**

40. The Administrative Procedure Act authorizes judicial review of final agency action. 5 U.S.C. § 704.

41. Final agency actions are those (1) that "mark the consummation of the agency's decisionmaking process" and (2) "by which rights or obligations have been determined, or from

which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation modified).

42. ICE's revocation of an order of supervision is a final agency action subject to this Court's review.

43. The revocation here marked the consummation of ICE's decisionmaking process regarding Petitioner's custody.

44. The revocation was also an action by which rights or obligations have been determined or from which legal consequences flowed because, upon information and belief, Respondents intend to detain Petitioner in violation of his rights under the Constitution, statute, and regulation.

**The *Accardi* Doctrine Requires Agencies to Follow Internal Rules**

45. Under the *Accardi* doctrine, a foundational principle of administrative law, agencies must follow their own procedures, rules, and instructions. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (setting aside an order of deportation where the Board of Immigration Appeals failed to follow procedures governing deportation proceedings); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required.").

46. *Accardi* is not "limited to rules attaining the status of formal regulations." *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991). Courts must also reverse agency action for violation of unpublished rules and instructions to agency officials. *See Morton v. Ruiz*, 415 U.S. 235 (affirming reversal of agency denial of public assistance made in violation of internal agency manual); *U.S. v. Heffner*, 420 F.2d 809, 812 (4th Cir. 1969) (under *Accardi*, reversing decision to admit evidence obtained by IRS agents for violating instructions on investigating tax fraud).

47. Where a release notification issued alongside an order of supervision instructs that a non-citizen with a final order of removal will be given an opportunity to prepare for an "orderly departure," ICE's failure to follow that instruction is an *Accardi* violation. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 169; *Ragbir v. Sessions*, 2018 WL 623557 (S.D.N.Y. Jan. 29, 2018), vacated and remanded on other grounds sub nom. *Ragbir v. Barr*, 2019 WL 6826008 (2d Cir. July 30, 2019); *Rombot v. Souza*, 296 F. Supp. 3d 383 (D. Mass. 2017) (ordering release of petitioners to give an opportunity to prepare for orderly departure).

## CLAIMS FOR RELIEF

### Count One
### Violation of the Fifth Amendment of the U.S. Constitution
### Substantive Due Process

48. Petitioner realleges all paragraphs above as if fully set forth here.

49. When ICE issued Petitioner an order of supervision, it found that he is neither a danger to the community nor a flight risk.

50. When Respondents first made the conditions of Petitioner's order of supervision more onerous on April 14th, 2025, Petitioner had complied with every condition of the order. No change in circumstances warranted the alteration of the order.

51. When Respondents revoked or expressed their intention to revoke the Petitioner's order of supervision in April 2026, Petitioner had continued to comply with every condition of the newly more restrictive order. No change in circumstances warranted the revocation of the order.

52. Petitioner's more restrictive circumstances and his threatened detention therefore does not bear a reasonable relationship to the two regulatory purposes of immigration detention: preventing danger to the community or flight prior to removal.

53. Because Respondents had no legitimate, non-punitive objective in revoking Petitioner's order of supervision, Petitioner's detention violates substantive due process under the Fifth Amendment to the U.S. Constitution.

**Count Two**
**Violation of the Fifth Amendment of the U.S. Constitution**
**Procedural Due Process**

54. Plaintiffs reallege all paragraphs above as if fully set forth here.

55. *Mathews v. Eldridge*, 424 U.S. 319, 333, instructs courts to balance three factors to determine whether procedural due process is satisfied: (1) the private interest at issue; (2) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and, (3) the government's interest, including fiscal and administrative burdens that additional or substitute procedural requirements entail.

56. The first factor, the private interest at issue, favors Petitioner. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause [of the Fifth Amendment] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690.

57. The second factor, the risk of erroneous deprivation of liberty and the probable value of procedural safeguards, favors Petitioner. To safeguard against erroneous deprivations of liberty, statute specifies the limited number of reasons that an order of supervision can be revoked. Regulations specify who may lawfully revoke the order and the procedures that must be followed when doing so, including giving notice and an opportunity to be heard. Respondents violated those laws here, leaving the risk of erroneous deprivation of liberty not just high, but certain. Requiring Respondents to give notice and an opportunity to respond prior to revoking an order of

supervision is of great value because it reduces the probability of needless detention of a person, like Petitioner, who is neither dangerous nor a flight risk.

58. The third factor, the government's interest, also favors Petitioner. When the government ignores law that ensures notice and an opportunity to respond to a person at risk of revocation of an order of supervision, it is more likely to waste limited financial and administrative resources on unnecessary detention of people who are neither flight risks nor dangerous. This waste drags down the efficiency of the entire immigration system. And because the government must also spend resources defending against a habeas corpus petition in federal court to compel Respondents to comply with law, requiring Respondents to instead provide notice and a meaningful opportunity to respond prior to revoking an order of supervision reduces fiscal and administrative burdens on the government.

59. For these reasons, revoking or intending to revoke Petitioner's order of supervision without providing notice and a meaningful opportunity to respond violated procedural due process under the Fifth Amendment to the U.S. Constitution.

**Count Three**
**Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (B)**
**Contrary to Law and Constitutional Right**

60. Plaintiffs reallege all paragraphs above as if fully set forth here.

61. Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A), (B).

62. The APA's reference to "law" in the phrase "not in accordance with law," "means, of course, any law, and not merely those laws that the agency itself is charged with administering." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) (emphasis in original).

63. Respondents' revocation of Petitioner's order of supervision was contrary to the agency's constitutional power under the Fifth Amendment's Due Process Clause, as explained above.

64. The revocation was also not in accordance with the INA and implementing regulations governing who may lawfully revoke an order of supervision and under what circumstances, as cited and discussed in the Statutory Framework section above.

65. Petitioner's order of supervision was not revoked by the ICE Executive Associate Director. The officer who revoked the order did not first make findings that revocation was in the public interest and that circumstances did not reasonably permit referral to the Executive Associate Director. Nor had the officer been delegated authority to revoke an order of supervision.

66. Before revoking the order, Respondents did not make findings that Petitioner is dangerous or unlikely to comply with a removal order, as required by statute.

67. Even assuming that regulations purporting to offer additional justifications for revocation of an order of supervision are not ultra vires, respondents did not comply with them. Respondents could not make findings that Petitioner's conduct indicated release would no longer be appropriate or that Petitioner violated any condition of release, because he had not.

68. Nor did the Respondents give Petitioner notice of the reasons for revocation and opportunity to be heard.

69. The revocation should be held unlawful and set aside because it was contrary to the agency's constitutional power and not in accordance with the INA and implementing regulations.

**Count Four**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)**
**Arbitrary and Capricious**

70. Petitioner realleges all paragraphs above as if fully set forth here.

71. Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

72. Respondents' revocation of Petitioner's order of supervision was arbitrary and capricious because it violated statute, regulation, and the Constitution, as described above.

73. An agency decision that "runs counter to the evidence before the agency" is also arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

74. Respondents' decision to revoke Petitioner's order of supervision ran counter to the evidence before the agency that Petitioner would comply with a demand to appear for removal without detention. Petitioner has never violated a condition of his order of supervision and no new facts or changed circumstances suggest he would.

75. The revocation also "failed to consider important aspects of the problem" before Respondents, making it arbitrary and capricious for multiple other reasons. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1910 (2020).

76. First, Respondents failed to consider the serious constitutional concerns raised by revoking Petitioner's order of supervision without notice and opportunity to respond.

77. Second, Respondents failed to consider the increased administrative burden to the agency caused by revoking the order of supervision of Petitioner, who is neither a flight risk nor a danger to the community, including financial and administrative costs incurred by the agency due to unnecessary detention.

78. Third, Respondents failed to consider reasonable alternatives to revoking Petitioner's order of supervision that were before the agency, like simply continuing release under the order of supervision and scheduling a future time and date to appear for removal. This alternative would

vindicate the government's interests in effectuating a removal order and save it the expense of detention not needed to guarantee Petitioner's appearance.

79. For these and other reasons, Respondents' revocation of Petitioner's order of supervision was arbitrary and capricious and should be held unlawful and set aside.

**Count Five**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C)**
**In Excess of Statutory Authority**

80. Petitioner realleges all paragraphs above as if fully set forth here.

81. Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

82. "An agency . . . literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022) (internal quotation marks and citation omitted).

83. 8 U.S.C. § 1231(a)(6) only authorizes detention past the 90-day removal period for a person who is found to be a danger to the community, unlikely to comply with a removal order, or whose removal order is on certain grounds specified in the statute. Even then, if removal "is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by [§ 1231(a)(6]. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 699-700.

84. Regulations that purport to give Respondents authority to revoke an order of supervision on grounds other than those listed § 1231(a)(6) are ultra vires and in excess of statutory authority

because "[r]egulations cannot circumvent the plain text of the statute." *You v. Nielsen*, 321 F. Supp. 3d. 451, 463 (S.D.N.Y. 2018)

85. Respondents' revocation of Petitioner's order of supervision or intended revocation was based on ultra vires regulations. It was therefore in excess of statutory authority and should be held unlawful and set aside.

**Count Six**
**Ultra Vires Action**

86. Plaintiffs reallege all paragraphs above as if fully set forth here.

87. There is no statute, constitutional provision, or other source of law that authorizes Respondents to detain Petitioner.

88. Petitioner has a non-statutory right of action to declare unlawful, set aside, and enjoin Respondents' ultra vires actions.

**Count Seven**
**Violation of the *Accardi* Doctrine**

89. Petitioner realleges all paragraphs above as if fully set forth here.

90. Under the *Accardi* doctrine, Petitioner has a right to set aside agency action that violated agency procedures, rules, or instructions. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 ("If petitioner can prove the allegation [that agency failed to follow its rules in a hearing] he should receive a new hearing").

91. Respondents violated agency regulations governing who and upon what findings it may properly revoke an order of supervision when it revoked Petitioner's order. "As a result, this Court cannot conclude that [the revoking officer] had the authority to revoke release" and Petitioner "is entitled to release on that basis alone." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 162 (citing *Rombot v. Moniz*, 296 F. Supp. 3d 386, 386-89); *see also, e.g., Zhu v. Genalo*, 2025 WL 2452352

(S.D.N.Y. Aug. 26, 2025); *M.S.L. v. Bostock*, 2025 WL 2430267 (D. Or. Aug. 21, 2025) (releasing habeas petitioner where revocation of an ICE order of supervision was ordered by someone without regulatory authority to do so).

92. Respondents also violated agency instructions in Petitioner's release notification to give an opportunity to prepare for an orderly departure when they revoked Petitioner's order without advance notice.

93. Under *Accardi*, Respondents' revocation of the order of supervision and decision to ignore instructions in the release notification should be set aside for violating agency procedures, rules, or instructions.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner requests that this Court:

a. Exercise jurisdiction over this matter;

b. Enjoin Respondents from taking Petitioner into physical custody;

c. Enjoin Petitioner's removal or transfer outside the jurisdiction of this Court and the United States pending its adjudication of this petition;

d. Enjoin Respondents from imposing further restrictions on Petitioner's liberty;

e. Declare that the revocation of Petitioner's Order of Supervision violates the Due Process Clause of the Fifth Amendment, the INA and implementing regulations, the APA, and the *Accardi* doctrine;

f. Order the removal of Petitioner's ankle monitor;

g. Order that the conditions of Petitioner's Order of Supervision be reverted to the less-restrictive conditions imposed between 2021 and April 14, 2025 (i.e., release without GPS monitoring and check-ins every other year);

h. Award Petitioner costs and reasonable attorneys' fees; and

i. Order such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Stephen M. Born
Mills & Born, LLC
33 Chelsea St.
Everett, MA 02149
(781) 321-1402
sborn@millsandborn.com

*Counsel for Petitioner*

Dated: May 15th, 2026

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Darinel Erasto Mejia Ramos, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 15th day of May, 2026.

/s/ Stephen M. Born
Stephen M. Born