UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DARINEL ERASTO MEJIA RAMOS, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 26-cv-12239-WGY |
| | * | |
| FRANK PADULA, Acting Boston Field | * | |
| Office Director, TODD LYONS, Acting | * | |
| Director U.S. Immigrations and Customs | * | |
| Enforcement, MARKWAYNE MULLIN, | * | |
| U.S. Secretary of Homeland Security, | * | |
| TODD BLANCHE, Acting U.S. Attorney | * | |
| General, | * | |
| | * | |
| Respondents. | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Petitioner Darinel Erasto Mejia Ramos ("Petitioner") brings this Petition for Writ of

Habeas Corpus and Complaint for Injunctive Relief against Respondents Frank Padula, Acting

Boston Field Office Director; Todd Lyons, Acting Director U.S. Immigrations and Customs

Enforcement ("ICE"); Markwayne Mullin, U.S. Secretary of Homeland Security; and Todd

Blanche, Acting U.S. Attorney General (collectively, "Respondents"). [ECF No. 1 ("Petition" or

"Pet.")]. Currently before the Court is Petitioner's Emergency Motion for a Temporary

Restraining Order ("TRO"). [ECF No. 2]. For the foregoing reasons, Petitioner's Emergency

Motion for a Temporary Restraining Order is **GRANTED**.

I.    **BACKGROUND**

A.    **Factual Background**

Petitioner is a noncitizen from Guatemala, [Pet. ¶ 6], who entered the United States in 2018 via the southern border where he was apprehended and detained by immigration authorities, [id. ¶ 8].  He was issued an expedited removal order on January 16, 2018.  [Id.].  On April 20, 2018, Petitioner was released on an order of supervision ("OSUP") requiring him to attend monthly check-ins with ICE and to wear an ankle monitor.  [Id. ¶¶ 9, 11].  His OSUP states:  "[b]ecause the Service has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions . . ."  [ECF No. 1-5 at 1].  On April 9, 2019, Petitioner filed an asylum application with U.S. Citizenship and Immigration Services ("USCIS"), and in 2020, finding it had no jurisdiction given Petitioner's expedited removal order, USCIS referred his case to an asylum officer to conduct a credible fear screening.  [Id. ¶ 10].

In 2021, after three years of compliance, Petitioner's OSUP requirements were reduced. [Pet. ¶ 11].  His ankle monitor was removed, and his reporting requirement was lengthened to every two years.  [Id.].  Petitioner continued to fully comply with his OSUP requirements, however, on April 14, 2025, without any explanation other than that "things had changed," he was ordered to return to monthly check-ins and wear the ankle monitor again.  [Id. ¶ 12].

At Petitioner's April 2026 check-in, he was told that at his next check-in, scheduled for May 18, 2026, he would need to leave the country, and that he needed to make a decision as to whether he would bring his family or leave alone.  [Pet. ¶ 13].  Petitioner understood that his OSUP had been revoked and that ICE intended to detain and remove him from the United States. [Id. ¶ 14].  He was not given any reasons for the revocation of his OSUP or the opportunity to

respond to the revocation.  [Id. ¶ 13].  Petitioner claims that the ICE official responsible for determining that his OSUP was or would be revoked had not been delegated authority to revoke his OSUP and did not refer the case to the ICE Executive Associate Director.  [Id. ¶ 15].  Petitioner also claims that he has never received a credible fear screening, which he still wishes to undergo, and that he intends to file an I-246 application for stay of deportation or removal at his May 18, 2026 check-in.  [Id. ¶¶ 16–17].

Petitioner resides in Springfield, Massachusetts with his wife and their three minor children, the youngest of whom is a United States citizen.  [Pet. ¶ 6].  He works as a landscaper and has no criminal history.  [Id.].  Petitioner came to the United States fleeing extortion and threats from gangs in Guatemala due to his Catholic faith.  [Id. ¶ 7].  For eight years, Petitioner has complied with all of ICE's requirements, has never missed an appointment, and has not run afoul of the law.  [ECF No. 1-4 at 2].

### B.    Procedural History

Petitioner filed his Petition, [Pet.], and motion for a TRO, [ECF No. 2], on May 15, 2026.  In his motion for a TRO, Petitioner requests that the Court order that he not be physically detained, removed from the United States, or moved outside the territory of the District of Massachusetts by Respondents, pending further order of the Court.  [Id. at 3].

## II.    LEGAL STANDARD

When evaluating a temporary restraining order, the Court considers four factors: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the request is denied; (3) the balance of hardships; and (4) whether the TRO is in the public interest.  Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 161–62 (1st Cir. 2004) ("[T]he traditional four-part preliminary injunction standard applies in full flower to motions brought under Rule 65

3

in hopes of securing prejudgment freeze orders."). The First Circuit has held that these four factors "are not entitled to equal weight in the decisional calculus." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). Rather, the movant's likelihood of success on the merits "is the main bearing wall of the four-factor framework." Id. Further, the Court may issue a TRO only if: (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1). Ex parte TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd of Teamsters & Auto Truck Drivers Loc. No, 70 of Alameda Cnty., 415 U.S. 423, 439 (1974).

## III.    DISCUSSION

The Court finds that the requirements for issuing an ex parte TRO are satisfied. Petitioner has set forth specific facts that "clearly show that immediate and irreparable injury, loss, or damage" may result before Respondents can be heard in an opposition, see Fed. R. Civ. P. 65(b); [ECF No. 1-4 (Affidavit of Darinel Mejia Ramos)], and Petitioner's counsel served the U.S. Attorney's Office with a copy of the motion for a TRO on May 15, 2026, [ECF No. 2 at 3].

Petitioner has set forth facts demonstrating that he is likely to succeed in his habeas proceeding. Under First Circuit precedent, ICE's decision to re-detain a noncitizen who has been granted supervised release is governed by 8 C.F.R. § 241.13(i)(2), which requires "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." Kong v. United States, 62

4

F.4th 608, 619–20 (1st Cir. 2023).  As evidenced by the language in his OSUP, as of April 2018, the government was previously unable to effectuate Petitioner's removal, and Respondents have provided Petitioner with no indication that circumstances have changed such that his removal is now significantly likely to occur in the reasonably foreseeable future.  See [Pet. ¶¶ 13–14]; [ECF No. 1-5 at 1].  Further, Petitioner has not received any information suggesting that his credible fear screening, which has been pending for six years, has now been scheduled, as would be required for Respondents to move forward with his removal proceedings.  See [Pet. ¶ 17].

The remaining injunctive relief factors also weigh in Petitioner's favor.  He is the sole supporter of his family, who he is at risk of being separated from, and he has expressed a fear of returning to Guatemala due to gang violence.  [ECF No. 1-4]; see generally [Pet.].  He has no criminal history and has fully complied with all previous requirements and conditions that ICE has imposed upon him.  [ECF No. 1-4 at 2].  Detention or removal from the country would result in significant, irreparable harm to Petitioner, and considering that Petitioner has previously complied with all of ICE's orders, there is limited risk to Respondents that he will fail to continue doing so going forward if he is afforded temporary injunctive relief.  As to the public interests at stake, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects," Zadvydas v. Davis, 533 U.S. 678, 690 (2001), and other Courts have recognized that "the public has a strong interest in upholding procedural protections against unlawful detention," J.P. v. Santacruz, No. 25-cv-01640, 2025 WL 2633199, at *3 (C.D. Cal. July 29, 2025) (quoting Vargas v. Jennings, No. 20-cv-05785, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)).

As such, in an abundance of caution, the Court temporarily enjoins the parties from deviating from the status quo, including detaining Petitioner or removing him from the District of Massachusetts, until the parties' rights can be fully briefed.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's motion for a temporary restraining order is **GRANTED**.  Respondents are temporarily **ENJOINED** from re-detaining Petitioner, or removing him from the District of Massachusetts, pending further order of the Court.

**SO ORDERED.**

May 17, 2026

/s/ *Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE